UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CURTIS EDWARDS,

       Plaintiff,                              Hon. Paul L. Maloney

v.                                                 Case No. 1:07-CV-848

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **reversed and this matter remanded for payment of benefits**.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 50 years of age at the time of the ALJ's decision. (Tr. 15). He successfully completed high school and worked previously as a driver, machine operator, and cement worker. (Tr. 123, 127-28, 145-51).

Plaintiff applied for benefits on February 23, 2004, alleging that he had been disabled since January 21, 2003, due to back pain, knee pain, and high blood pressure. (Tr. 88-90, 117, 202-04, 418-20). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 40-87, 205-09). On March 1, 2007, Plaintiff appeared before ALJ Patrick Toal, with testimony being offered by Plaintiff and vocational expert, John Petrovich. (Tr. 414-65). In a written decision dated March 30, 2007, the ALJ determined that Plaintiff was not disabled. (Tr. 14-22). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 5-8). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**RELEVANT MEDICAL HISTORY**[1]

On November 12, 2003, Plaintiff participated in a consultive examination conducted by Richard King, Ed.D. (Tr. 284-86). Plaintiff was "cooperative" and "alert to the various testing cues." (Tr. 284). Plaintiff's "energy level was appropriate" and he "did appear to put forth his best effort toward the testing tasks." (Tr. 284). Plaintiff participated in intelligence testing, the results of which revealed that he possessed a verbal IQ of 66, a performance IQ of 80, and a full-scale IQ of 70. (Tr. 284-86). Plaintiff's performance in various other tests revealed that his "intellectual capabilities are significantly limited." (Tr. 285). Dr. King concluded that Plaintiff possesses "very limited intellectual functioning and achievement abilities" and "will need to be placed in training and work tasks, which are very simple and routine in nature." (Tr. 286).

On April 13, 2004, Plaintiff participated in a consultive examination conducted by Richard King, Ed.D. and Wayne Kinzie, Ph.D. (Tr. 295-303). Plaintiff reported that he completed high school, after which he joined the Army. (Tr. 295-96). Plaintiff reported that he "went AWOL" from the Army, however, because he "couldn't deal with it." (Tr. 296). Plaintiff also stated, "I used to drink, but I don't now." (Tr. 296). The results of a mental status examination were unremarkable. (Tr. 297-99). Plaintiff participated in intelligence testing, the results of which indicated that he possessed a verbal IQ of 58, a performance IQ of 62, and a full-scale IQ of 59. (Tr. 302). The examiners concluded that Plaintiff experienced "very significant limitations. . .related to intellectual

---

[1] As detailed below, the ALJ concluded that Plaintiff suffers from severe mental impairments, but does not suffer from a severe physical impairment. Plaintiff has not challenged this finding. Plaintiff has likewise not challenged the ALJ's RFC determination as regards his physical abilities. Thus, the Court's discussion of the medical evidence will focus on Plaintiff's non-exertional impairments.

functioning." (Tr. 299). Plaintiff was diagnosed with dysthymic disorder and mild mental retardation. (Tr. 299). His GAF score was rated as 53.[2] (Tr. 299).

On August 5, 2004, a Social Security medical examiner completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 325-38). Determining that Plaintiff suffered from dysthymia and a cognitive disorder, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.02 (Organic Mental Disorders) and Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 326-34). The doctor determined, however, that Plaintiff failed to satisfy the Part B criteria for these particular Listings. (Tr. 335). Specifically, the doctor concluded that Plaintiff experienced moderate restrictions in the activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. (Tr. 335).

The doctor also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 321-23). Plaintiff's abilities were characterized as "moderately limited" in three categories. (Tr. 321-22). With respect to the remaining 17 categories, however, the doctor reported that Plaintiff was "not significantly limited." (Tr. 321-22). The doctor concluded that Plaintiff was capable of performing "simple repetitive work." (Tr. 337).

---

[2] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) (hereinafter DSM-IV). A GAF score of 53 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

At the administrative hearing, Plaintiff testified that following his mother's death in 1984 he began "drinking a lot." (Tr. 432-33). Plaintiff reported that as a result of his heavy drinking he eventually began using drugs. (Tr. 436). Plaintiff was incarcerated in approximately 1997 for marijuana possession. (Tr. 435-37). Plaintiff testified that he began using cocaine around 2004. (Tr. 435-37). Plaintiff indicated that he was consuming "quite a bit" of medications containing codeine, as well as taking Methadone three times daily. (Tr. 434-44).

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

B. **The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the following severe impairments:(1) borderline intellectual functioning, (2) mild mental retardation, and (3) dysthymia. (Tr. 17). The ALJ further determined, however, that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 17). The ALJ concluded that while Plaintiff was unable to perform his past relevant work, there existed a significant number of jobs which he could perform despite his limitations. (Tr. 21-22). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

### 1. The ALJ's Decision is Not Supported by Substantial Evidence

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

7

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform work subject to the following limitations: (1) he can lift/carry 20 pounds occasionally and 10 pounds frequently; (2) he must be able to sit/stand as needed; (3) he cannot engage in repetitive bending activities; (4) he can only occasionally stoop or kneel; (5) he must avoid concentrated exposure to fumes, dusts, gases, and areas of poor ventilation, and (6) he is unable to maintain the attention and concentration necessary to perform detailed or complex work. (Tr. 19). A vocational expert testified that there existed approximately 19,000 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 460-62). Accordingly, the ALJ concluded that Plaintiff was not disabled.

> a. The ALJ's determination regarding Plaintiff's RFC is not supported by substantial evidence

A claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996); *see also*, *Hines v. Barnhart*, 453 F.3d 559, 562-63 (4th Cir. 2006); *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001); *Shaw v. Apfel*, 220 F.3d 937, 939 (8th Cir. 2000); *Lanclos v. Apfel*, 2000 WL 1054893 at *3, n.3 (9th Cir., July 31, 2000); *Moore v. Sullivan*, 895 F.2d 1065, 1069 (5th Cir. 1990) (to properly conclude that a claimant is capable of performing work requires "a determination that the claimant can *hold* whatever job he finds for a significant period of time").

The ALJ acknowledged that Plaintiff suffers from borderline intellectual functioning and mild mental retardation, but his RFC determination fails to sufficiently account for the impact of such. As noted above, testing has revealed that Plaintiff suffers from severe cognitive limitations. The ALJ, however, discounted the results of these test results on the ground that the examiners "were not privy to" Plaintiff's history of substance abuse. (Tr. 16-17). The record contains no evidence that Plaintiff was impaired during these examinations or that his performance during these examinations was negatively impacted by his substance abuse. Moreover, the examiners did not call into question the results or accuracy of Plaintiff's performance. The Court does not question that prolonged drug and alcohol abuse *can* negatively impact an individual's cognitive abilities and impact the results of intelligence testing. However, there is no *evidence* that such was the case here. The Court finds the ALJ's speculation in this regard quite unpersuasive.

As noted above, testing conducted on November 12, 2003, revealed that Plaintiff possessed a verbal IQ of 66, a performance IQ of 80, and a full-scale IQ of 70. The results of testing conducted five months later revealed that Plaintiff possessed a verbal IQ of 58, a performance IQ of 62, and a full-scale IQ of 59. Claimants suffering from this level of intellectual functioning are often considered mentally retarded and, therefore, disabled and entitled to benefits. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05 (Mental Retardation). Despite evidence that Plaintiff suffered from significant cognitive limitations, the ALJ declined to specifically address whether Plaintiff satisfied the requirements of this particular listing. The Court finds this puzzling considering that the ALJ concluded that Plaintiff suffers from mild mental retardation. More importantly, the Court finds that the ALJ's RFC fails to account for Plaintiff's severe intellectual limitations. While the ALJ determined that Plaintiff is unable to maintain the attention and concentration necessary to

9

perform detailed or complex work, the Court finds that such fails to sufficiently account for Plaintiff's severe intellectual limitations.

In sum, the ALJ's RFC determination is not supported by substantial evidence. As previously noted, the vocational expert testified that there existed approximately 19,000 jobs which an individual with Plaintiff's RFC could perform, his limitations notwithstanding. It was on the basis of this testimony that the ALJ concluded that Plaintiff was not disabled. However, the ALJ's RFC determination is not sufficiently supported by the evidence of record. In short, therefore, the hypothetical question, the response to which the ALJ relied upon to support his decision, was based upon an improper RFC determination. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996) (while the ALJ may rely upon responses to hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments).

b.  Evidence of Plaintiff's Disability is Compelling

While the Court finds that the ALJ's decision fails to comply with the relevant legal standards, Plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Secretary of Health and Human Serv's*, 17 F.3d 171, 176 (6th Cir. 1994) (the court can reverse the Commissioner's decision and award benefits if all essential factual issues have been resolved and proof of disability is compelling).

Plaintiff asserts that his impairments satisfy Section 12.05 of the Listing of Impairments. The Court agrees. Section 12.05 of the Listing provides, in relevant part, the following:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
>
> OR
>
> B. A valid verbal, performance, or full scale IQ of 59 or less;
>
> OR
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function;
>
> OR
>
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:
>
>    1. Marked restriction of activities of daily living; or
>
>    2. Marked difficulties in maintaining social functioning; or
>
>    3. Marked difficulties in maintaining concentration, persistence or pace; or
>
>    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.05 (2006).

Plaintiff asserts that he satisfies section 12.05(B) and 12.05(C). As noted above, testing conducted in 2003 revealed that Plaintiff possesses a verbal IQ of 66, a performance IQ of 80, and a full-scale IQ of 70. Testing conducted in 2004 revealed that Plaintiff possesses a verbal IQ of 58, a performance IQ of 62, and a full-scale IQ of 59. That these tests were not administered until after Plaintiff attained the age of 22 is of no consequence. *See Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (in analyzing a claim under section 12.05, the court concluded that "absent evidence of sudden trauma that can cause retardation," IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life). Moreover, while the ALJ did not find that Plaintiff suffered from a severe physical impairment, the ALJ's RFC determination certainly suggests that Plaintiff also suffers from one or more non-severe physical impairments which impose additional and significant work-related limitations.

While Plaintiff satisfies the criteria articulated in subsection (B) and (C), he must also satisfy the "diagnostic description" of mental retardation articulated in the introductory paragraph of Section 12.05. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00(A) ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets" section 12.05). Specifically, Plaintiff must establish that he suffers from "significantly subaverage general intellectual functioning with deficits in adaptive functioning" and that such "manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *See Cooper v. Commissioner of Social Security*, 217 Fed. Appx. 450, 451 (6th Cir., Feb. 15, 2007); *see also*, *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (to satisfy Section 12.05, the claimant must demonstrate that he experienced deficiencies in adaptive functioning prior to attaining the age of 22).

Plaintiff participated in special education classes in high school. (Tr. 123, 429, 453-54). Plaintiff's work history is inconsistent and includes work for Goodwill Industries and Hope Network, employment which the vocational expert testified is not necessarily competitive employment. (Tr. 113, 118, 126-28, 145-51, 423-28, 463-64). Such supports the conclusion that Plaintiff suffered from "significantly subaverage general intellectual functioning with deficits in adaptive functioning" prior to the age of 22. This determination is further supported by the ALJ's conclusion that Plaintiff suffers from mental retardation. The Court finds compelling the evidence that Plaintiff satisfies Section 12.05 of the Listing of Impairments. The Court, therefore, recommends that Plaintiff be awarded benefits.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision is not supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **reversed and this matter remanded for payment of benefits**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: September 9, 2008

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge